Bobby R. DEPOYSTER *v.* Lamar COLE, Executive
Director, Arkansas Activities Association; Leon Wigginton,
President, Arkansas Activities Association, d/b/a Executive
Committee of Arkansas Activities Association

88-182                                              766 S.W.2d 606

Supreme Court of Arkansas
Opinion delivered March 13, 1989

*Rose Law Firm, A Professional Association,* by: *David L.
Williams* and *B. Michael Bennett,* for appellant.

*McMillan, Turner & McCorkle,* by: *Ed McCorkle,* for
appellee.

JACK HOLT, JR., Chief Justice. This appeal is from the trial

court's determination that certain voting methods employed by the Executive Committee of the Arkansas Activities Association ("AAA") did not violate the Arkansas Freedom of Information Act, Ark. Code Ann. §§ 25-19-101—25-19-107 (Supp. 1987). Also at issue is the court's refusal to grant appellant Bobby Depoyster a new trial. We reverse and remand.

The AAA is an organization of approximately 500 public and private secondary schools in this state and is responsible for the administration of the rules and regulations governing inter-scholastic athletic competitions among member schools. Appellee Lamar Cole is the executive director of the AAA; appellee Leon Wigginton is the president. The executive committee of the AAA is the association's governing body at all times when the overall governing body composed of the member schools is not in session. The executive committee is made up of sixteen principals and superintendents from eight districts around the state.

On January 20, 1988, the executive committee met to select the sites for 22 regional and state basketball tournaments for the B, A, AA, and other classifications from bids which had been submitted by those schools interested in hosting a tournament. The tournaments were to begin on February 29, 1988.

Notice of the January 20 meeting was given to member schools and to the press. Principals, superintendents, and members of the public were present at the meeting. Appellant Bobby Depoyster, superintendent of the Newark School District, an AAA member, did not attend.

At the meeting, members of the executive committee discussed and voted for the various tournament locations. In those cases where only two bids had been received for a particular site, the vote was by a show of hands. In cases where more than two bids had been received, the vote was by unsigned written ballot. As to those votes, each member was asked to record his choices on a slip of paper — the sites to be listed in preferential order. The votes were then somehow tallied on a blackboard in view of those in attendance at the meeting. The slips of paper were discarded.

Thirteen sites were selected by show of hands; nine sites required written ballots due to the number of bids received. At the time of the meeting, no objection was made by anyone present as

to the site selections or the manner in which the sites were voted upon.

Following the January 20 meeting, appellant Depoyster contacted the AAA on several occasions objecting that the voting method violated the FOIA in that utilization of unsigned written ballots amounted to the use of secret ballots contrary to the spirit and intent of the Act. He also claimed destruction of the ballots violated the Act. Upon filing an FOIA request, Depoyster was furnished with the January 20 vote results.

Subsequently, Depoyster brought suit seeking: (1) a declaratory judgment that the actions of the executive committee had violated the FOIA; (2) an injunction to prevent the AAA from taking similar actions in the future; and (3) costs and attorney's fees. In response, the AAA maintained that its general procedure on other matters was to use written mail-out ballots which were signed and retained. Since the January 20 meeting was a public meeting, it was deemed sufficient to vote by a show of hands — with the exception that for those sites reflecting multiple bids written ballots were considered a more objective method of determining tournament sites. No thought had been given to signing the ballots or retaining them.

The trial court determined that there had been no violation of the FOIA. Depoyster moved for a new trial, and the AAA responded by affidavit that on March 24, 1988, the executive committee voted unanimously that all written ballots would in the future be signed and would be retained for a period of one year. In denying Depoyster's motion for a new trial, the court found that the balloting method employed on January 20 was not intended to and had not prevented public inquiry or examination of the results of the committee's actions.

The FOIA was passed wholly in the public interest and is to be liberally interpreted to the end that its praiseworthy purposes may be achieved. *Arkansas Gazette Co.* v. *Pickens*, 258 Ark. 69, 522 S.W.2d 350 (1975); *Laman* v. *McCord*, 245 Ark. 401, 432 S.W.2d 753 (1968). The issue before us, simply put, is whether the trial court correctly concluded that the executive committee of the AAA did not violate the Arkansas Freedom of Information Act when it used unsigned written ballots which were disposed of in a manner making their review impossible.

■ It was conceded at trial, and on appeal, that the AAA is subject to the provisions of the FOIA as an organization in this state supported "wholly or in part by public funds or expending public funds." *See* Ark. Code Ann. § 25-19-103(2) (1987). *See e.g., North Central Assn. of Colleges and Schools* v. *Troutt Bros., Inc.,* 261 Ark. 378, 548 S.W.2d 825 (1977). A review of the provisions of the FOIA makes clear that neither the use of unsigned written slips as ballots nor the failure of the AAA to retain voting records can be condoned and that the actions of the executive committee clearly violated the overall intent of the Act, if not specific sections. Ark. Code Ann. § 25-19-102 (1987) provides:

> It is vital in a democratic society that public business be performed in an open and public manner so that the electors shall be advised of the performance of public officials and of the decisions that are reached in public activity and in making public policy. *Toward this end, this chapter is adopted, making it possible for them, or their representatives to learn and to report fully the activities of their public officials.* [Emphasis ours.]

Looking about us, we readily see that the decisions of this court, as well as those of the legislature, city council, and other governmental agencies are all made public to the extent of each individual's vote. There can be no doubt that the use of unsigned written slips as ballots which are not retained as part of an organization's records does little to assist the public in being advised as to the performance of the organization's members or the decisions reached by those individuals. Obviously, it makes it impossible, rather than possible, for concerned citizens or their representatives to learn and report fully the activities of the officials of such organizations. Section 25-19-102, *supra.*

To bring about the intent and purpose of the FOIA, section 25-19-106(a) provides that, as to those organizations subject to its provisions, all meetings, formal or informal, special or regular, shall be public meetings except as otherwise specifically provided by law. While the January 20 meeting was no doubt open to the public, the balloting method employed was such that there was no way to determine which member of the executive committee voted for any particular site. It would be sheer speculation on our

part to suggest or assume that the defect could have been remedied in that those in attendance at the meeting were in a position to inquire as to each member's vote. We have no idea whether such inquiry would have been permitted or, if permitted, whether any responses would have been forthcoming. In short, the voting should have been handled in such a way that the public was, or could have been, advised of the performance of the individual members of the AAA's executive committee.

■ Moreover, section 25-19-103(1) of the FOIA requires that all writings or data compilations in any form, required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried out by any agency supported by public funds, "shall be public records". The recorded votes of individual members of the executive committee of the AAA obviously constitute a record of the performance or lack of performance of official functions carried out by the AAA, and there was testimony that it was the general practice of the AAA to retain mail-out ballots used in voting on matters coming before the AAA. The vote slips at issue, being records generally or otherwise kept by the AAA, therefore constituted public records which should have been retained.

■ Finally, those records must be open to inspection and copying by any citizen of this state, except as otherwise specifically provided in the FOIA. Section 25-19-105(a). *See e.g., Arkansas Highway & Transp. Dep't . v. Hope Brick Works, Inc.*, 294 Ark. 490, 744 S.W.2d 711 (1988). As the ballot slips were not retained it would have been impossible for those not in attendance to have determined a committee member's vote even if the ballots had been signed. Section 25-19-105(a) envisions that public records will be retained and made available for all citizens to examine.

While we find nothing in the record to suggest it was the intent of the executive committee to operate in a clandestine manner by making use of "secret" ballots or that the ballots were destroyed in order to prevent their review, this does not alter our conclusion that the balloting method employed at the January 20 meeting prevented the public from determining the performance of the AAA's executive committee and thus violated the FOIA.

Accordingly, the judgment of the trial court is reversed and remanded with directions to enter a declaratory judgment that the appellee executive committee's use of unsigned written ballots which were not retained as part of the AAA's records violated the FOIA. In light of evidence of record that the executive committee has voted that all future ballots would be signed and retained, we find it unnecessary at this juncture to address Depoyster's claim for injunctive relief as to future conduct on the part of the executive committee.

Depoyster claims that this case is proper for the invalidation remedy suggested in *Rehab Hospital Services Corp.* v. *Delta-Hills Health Systems Agency, Inc.*, 285 Ark. 397, 687 S.W.2d 840 (1985). We disagree. Furthermore, our disposition of the issues on appeal makes it unnecessary for us to address the trial court's refusal to grant a new trial.

Depoyster also maintains that he is entitled to an award of attorney's fees and costs. Ark. Code Ann. § 25-19-107(d) (Supp. 1987) provides that in any action to enforce the rights granted under the FOIA, or in any appeal therefrom, the court shall assess against the defendant reasonable attorney fees and other litigation expenses reasonably incurred by a plaintiff who has substantially prevailed *"unless the court finds that the position of the defendant was substantially justified or that other circumstances make an award of these expenses unjust."* (Emphasis ours.)

Notwithstanding that we are reversing the trial court's judgment, we find that the circumstances surrounding the January 20 vote would make an award of attorney's fees and costs unjust. In a well-reasoned article, one authority discusses the FOIA provision for litigation expenses and states in part:

> [T]he court "shall assess" attorney's fees and other costs against a defendant in an FOIA case if the plaintiff has "substantially prevailed," unless the court finds that the defendant's position was "substantially justified" or that other circumstances would make such an award unjust. *The court need not, therefore, make a fee award in every FOIA case; indeed, the purpose of the fee-shifting provision is to assess fees and costs where public officials have acted arbitrarily or in bad faith in withholding records.*

[Emphasis ours.]

Watkins, *Recent Developments Under the Arkansas Freedom of Information Act*, 1987 Ark. L. Notes 59, 64.

█ We do not imply by this opinion that an award of litigation expenses under the FOIA will always be defeated in the absence of arbitrary or bad faith conduct on the part of the defendant. However, we do find that test decisive under the circumstances of this case.

Public notice of the January 20 meeting was given to member schools and to the press, and the voting was conducted in public. As to most of the site selections, the vote was by a show of hands. Those votes involving written ballots were tallied on a blackboard subject to inspection by anyone in attendance at the meeting. Upon request, the AAA furnished appellant Depoyster with whatever records it had as to the vote totals. Only a few months after the meeting, the AAA took measures to guarantee that in the future all written ballots would be signed and retained. In sum, the circumstances do not suggest either arbitrary or bad faith conduct.

While we recognize the salutary purposes underlying the FOIA and its sanctions, the facts before us simply do not warrant an award of fees and costs.

Reversed and remanded.

HICKMAN, HAYS, and GLAZE, JJ., dissent in part.

TOM GLAZE, Justice, dissenting in part. While I agree with the majority that the appellees' use of unsigned and unretained written ballots violated the FOIA, I disagree with the court's first-time interpretation of the Act's provision that provides for attorney fees and costs. That statutory provision, Ark. Code Ann. § 25-19-107(d) (Supp. 1987), provides as follows:

> (d) In any action to enforce the rights granted by this chapter, or in any appeal therefrom, the court *shall assess* against the defendant *reasonable attorney fees and other litigation expenses* reasonably incurred *by a plaintiff who has substantially prevailed unless* the court finds that *the position of the defendant was substantially justified or that other circumstances make an award of these ex-*

*penses unjust.* However, no expenses shall be assessed against the State of Arkansas or any of its agencies or departments. If the defendant has substantially prevailed in the action, the court may assess expenses against the plaintiff only upon a finding that the action was initiated primarily for frivolous or dilatory purposes. (Emphasis added.)

Here, the appellant has prevailed on appeal, so the appellant clearly has met the first prong set forth in the law above — he substantially prevailed in his suit to enforce a right granted under FOIA. The only issue left, then, is whether the appellees' position was substantially justified or other circumstances make an award of attorney fees or costs unjust. I believe that the appellees' actions were unquestionably contrary to the terms and spirit of the FOIA and that appellant is entitled to an award of fees and costs.

In denying attorney fees and costs, the majority, relying on language contained in an article by a University of Arkansas Law School associate professor, concludes that the circumstances in this case do not suggest either arbitrary or bad faith conduct on the appellees' part. *See* Watkins, *Recent Developments Under the Arkansas Freedom of Information Act,* 1987 Ark. L. Notes 59, 64. From my reading of the article relied upon by the majority, I find nothing to support the "arbitrary or bad faith conduct" test that this court now wishes to impose. The article, itself, suggests the purpose of the Act's attorney fee provision is to assess fees and costs where public officials have acted "arbitrarily or in bad faith" in withholding records, but the author cites no legal authority for such a proposition. In my opinion, such a bad faith test is far too restrictive to apply to an Act that is to be liberally construed. If this court decides to engraft a "bad faith" requirement onto the FOIA as a prerequisite for an award of attorney fees, I fear such awards will be as rare as the dodo bird.

Language similar to that employed in Arkansas's FOIA attorney fee provision can be found in certain federal acts which have been construed in some federal court cases. The case of *Natchez Coca-Cola Bottling Co., Inc. v. N.L.R.B.,* 750 F.2d 1350 (5th Cir. 1985), concerned the Equal Access to Justice Act which provided that a party shall receive attorney fees and other

expenses "unless the adjudicative officer of the agency finds that the position of the agency as a party ... was substantially justified or that special circumstances make an award unjust." In its opinion, the court recognized the rule that the government bore the burden of proving that the General Counsel's action *had a reasonable basis in both law and fact*. In applying that rule, the court held that the General Counsel was substantially justified in its action and that attorney fees were precluded. In *Fenster* v. *Brown*, 617 F.2d 740 (D.C. Cir. 1979), the court addressed the federal FOI provision which states that a court may assess attorney fees and litigation costs "in any case ... in which the complainant has substantially prevailed." The circuit court mentioned the following four criteria to consider in deciding whether an attorney fee award should be made:

(1) the benefit to the public, if any, derived from the case;

(2) the commercial benefit to the complainant;

(3) the nature of the complainant's interest in the records sought; and

(4) whether the government's withholding of the records had a reasonable basis in law.[1]

These federal cases, of course, do not control the attorney fee issue before us, but in a limited way we might find some guidance. For example, if a reasonable legal basis exists for a public official's having violated the FOIA, a court would be correct in awarding no fee or costs because the official was "substantially justified" in his or her actions. In my opinion, this "reasonable legal basis" position should, at the very least, be the threshold requirement in refusing or awarding attorney's fees in FOIA cases. In other words, if a public official has no reasonable legal basis upon which he or she denies access to public meetings or records that are held or kept pursuant to the terms of the FOIA, then the courts should award attorney fees and costs. Whether other circumstances may exist that would cause such an award to be unjust would necessarily be determined upon a case-by-case

---

[1] These four criteria were reported in Senate Report 19, reprinted in Legislative History 171.

basis.

The FOIA attorney fee and costs provision serves to encourage a person to file suit when a violation of that Act occurs. In this respect, the provision ensures the enforcement of the Act's requirements, and, indirectly, fosters compliance with the Act, as well. While I can and will presume the appellees are well intentioned in the instant case, they have offered no valid justifications — legal bases — for having violated the FOIA. In fact, the appellant has brought to this court's attention that the Arkansas Attorney General's office previously had issued opinions to certain officials concerning the use of ballots and indicating such ballots must be signed and retained subject to inspection under the FOIA. See Ark. Op. Att'y Gen. File No. 149-A Op. No. 74-72 (May 23, 1974); Ark. Op. Att'y Gen. File No. 149-A (Nov. 22, 1971). Apparently appellees were unaware of these opinions and had failed to request advice on this matter from either the Attorney General or other legal counsel.

Appellees did, however, prevail at the trial level which does, in my view, present a circumstance in favor of their argument that no award of attorney fees is justified in this cause. Of course, a trial court's decision favoring a public official's action under the FOIA is certainly one circumstance for this court to consider when deciding if attorney fees or costs should be awarded, but that factor alone is not, and should not be, binding. When I review the facts and law of this case, I believe the majority's decision to deny attorney fees in this case is wrong.

The trial court clearly was wrong in holding the appellees did not violate the FOIA because they did not *intend* to prevent public inquiry or examination of the results of the AAA Committee's actions. None of this court's prior decisions can be read to suggest a person or official must intentionally violate the FOIA before a complaint, seeking to enforce the Act, can prevail. In *Laman* v. *McCord*, 245 Ark. 401, 432 S.W.2d 753 (1968), this court considered the penal provision contained in the FOIA and held very clearly that such a provision does not make the entire Act penal. The court in *Laman* was emphatic in stating that it had no hesitation in asserting its conviction that the FOIA was passed wholly in the public interest and is to be liberally interpreted to the end that the Act's praiseworthy purposes may be achieved.

The court added that the language of the Act is so clear, so positive, that there is hardly any need for interpretation. *Id.* at 405, 432 S.W.2d at 755. That, surely, is the situation at bar.

Here, appellant brought suit seeking declaratory relief that the appellees' actions had violated the FOIA, but, in order to obtain such relief, he was required to appeal, having received an adverse decision below. Appellees did — much to their credit — vote to sign and retain written ballots at future meetings. However, as noted above, that action was not taken until after trial. The parties reached no settlement of their differences, and no court order was entered below so as to reflect the appellees' intent to comply with the FOIA in the future. Under such circumstances, the appellees were free to follow the same practice in casting unsigned ballots in future meetings even though I am sure they would have met their pledge not to do so in the future. In any event, an appeal was required in order to resolve the respective parties' dispute as to whether appellees' actions violated the FOIA.

In sum, the present case is the first for this court to construe the Act's new attorney fees and costs provision, but before reaching the attorney fee issue, the court held that the FOIA may be violated even though a person or public official never actually intended to do so. Situations will exist — including situations where the Act was not intentionally violated — when attorney fees and costs will be justified and this court should not adopt a test that requires a showing of bad faith before such awards can be granted. Such a test is not called for under the terms of the FOIA, and this court's requirement of bad faith is too restrictive and will serve only to prevent the Act's enforcement.

I also disagree with the majority's decision not to address the appellee's injunctive request. This court declines to reach the injunction issue because, after the trial below, the executive committee voted that all future ballots would be signed and retained. Appellant says his request is still viable based on the appellees' past illegal decision. Of course, appellant is correct to the extent that while the appellees apparently voted not to violate the FOIA in the future, that vote or decision was never stipulated or made a part of any court order; to the contrary, appellant was required to pursue his right of appeal in order to obtain a holding

that appellees had violated the FOIA.

In my view, appellant is certainly entitled to have this court reach the issue of whether he is entitled to injunctive relief. This request, however, would be unavailing, because, in my opinion, the circuit court simply has no power to issue an injunction. *See, Cummings* v. *Fingers*, 296 Ark. 276, 280-281 n.2, 753 S.W.2d 865, 868 n.2 (1988); *Id.* at 281, 753 S.W.2d at 868 (Newbern, J., concurring). I believe the appellant is entitled to a decision on this issue now. Certainly, our decision, one way or the other, would serve to eliminate future confusion on this subject.

HICKMAN and HAYS, JJ., join this dissent.