The Honorable Pat Flanagin State Representative 935 North Washington Forrest City, Arkansas 72335
Dear Representative Flanagin:
This is in response to your request for an opinion on seven questions regarding the White River Levee District, which was established by Special Act 97 of 1911. It is my understanding from the letter attached to your request that the cost of construction, maintenance expenses, and all other expenses regarding the levee have been borne entirely by the "taxpayers within the district." The letter provides that "no funds are received from any government agency or the public in general." Further, the attached correspondence provides that the operation of the levee district is governed by a five member board of directors; the members of the board are elected at landowner conventions. Your questions regarding the district are restated and addressed below in the order posed.
Question 1 — We have an annual meeting in May each year that is open tothe taxpayers for any complaints or concerns. Can the special meetingsthat are called for the purpose of conducting levee board business beclosed to the public?
The answer to this question requires consideration of the Arkansas Freedom of Information Act (FOIA), which is codified as A.C.A. §§25-19-101—107 (Repl. 1992 Supp. 1995). Section 25-19-102 (Repl. 1992), the policy statement of the FOIA, states that "public business [shall] be performed in an open and public manner so that the electors shall be advised of the performance of public officials and of the decisions that are reached in public activity and in making public policy." Op. Att'y Gen. No. 95-353. The Arkansas Supreme Court has concluded that the FOIA "was passed wholly in the public interest and is to be liberally interpreted to the end that its praiseworthy purposes may be achieved." Swaney v. Tilford, 320 Ark. 652, 898 S.W.2d 462 (1995). It is clear that all state and local governmental entities are subject to the FOIA, and the FOIA also applies to "any other agency wholly or partially supported by public funds or expending public funds." A.C.A. §25-19-103 (Repl. 1992); see also A.C.A. § 25-19-106(a) (Repl. 1992); Op. Att'y Gen. Nos. 94-023, 96-013, and 96-016. It is my opinion that the White River Levee District is in all likelihood a governmental entity, and it is, therefore, subject to the FOIA.
The General Assembly established the White River Levee District in 1911.See Special Act 97 of 1911. Special Act 97 identified the territory that was to be included in the levee district, established a board of levee directors as the governing body of the district, selected the original members of the board of levee directors, and provided that it was the duty of the board of directors to establish and maintain a levee to protect the property in the district. The right of eminent domain was expressly conferred upon the district, and the board of directors was granted the authority to assess and levy annually a tax upon all lands within the district. Further, the board of directors was granted the power to borrow money and issue bonds or other evidences of indebtedness.
Arkansas Code Annotated § 25-19-103(2) defines "public meetings":
 "Public meetings" means the meetings of any bureau, commission, or agency of the state, or any political subdivision of the state, including municipalities and counties, boards of education, and all other boards, bureaus, commissions, or organizations in the State of Arkansas, except grand juries, supported wholly or in part by public funds or expending public funds.
In Quapaw Cent. Business Improvement Dist. v. Bond-Kinman, Inc.,315 Ark. 703, 870 S.W.2d 390 (1994), the Arkansas Supreme Court commented that improvement districts are agents of the state and derive their limited powers and duties of a public nature by legislative delegation through the taxing power of the state. Although the issue in the Quapaw
case concerned the application of the Uniform Commercial Code rather than the FOIA, the court concluded that the UCC was inapplicable because the improvement district was a government agency. See also Altheimer v. Boardof Directors of Plum Bayou Levee District, 79 Ark. 229, 95 S.W. 140
(1906) (levee district is agency of government called into being to perform a specific function). Similarly, it is my opinion that the White River Levee District is in all likelihood a governmental entity for purposes of the FOIA.
In a comparable situation, this office opined that the meetings of suburban improvement districts are subject to the FOIA. See Op. Att'y Gen. No. 92-312. We emphasized the fact that suburban improvement districts are supported through local assessments. The levee in the White River Levee District is also funded through local assessments levied upon the real property within the district.[1] The Arkansas Supreme Court has commented:
 A local assessment is a compulsory contribution, levied by the Legislature or pursuant to legislative delegation of authority, for the purpose of defraying all or a part of the expense of constructing or maintaining a specific local improvement and peculiarly benefited by such local improvement in proportion to but not substantially in excess of the benefits so received by the property affected.
Rainwater v. Haynes, 244 Ark. 1191, 428 S.W.2d 254 (1968) (quoting Horace Sloan, A Treatise on the Law of Improvement Districts in Arkansas
(1928)). Although the FOIA does not define the term "public funds," the Arkansas Supreme Court has commented that the term "public funds" as used in the FOIA means "Moneys belonging to government, or any department of it, in hands of public official." Sebastian County Chapter of theAmerican Red Cross v. Weatherford, 311 Ark. 656, 846 S.W.2d 641 (1993) (quoting Black's Law Dictionary (6th ed. 1990)). Black's Law Dictionary also provides that the term "department" means "a branch or division of governmental administration." It is my opinion that the assessment funds in the instant case would in all likelihood be considered public funds because they belong to a governmental agency, the White River Levee District, and are in the hands of public officials, the board of directors of the levee district, which constitutes the governing body of the agency.
With regard to the manner of conducting public meetings pursuant to the FOIA, A.C.A. § 25-19-106 (a) (Repl. 1992) provides:
 Except as otherwise specifically provided by law, all meetings, formal or informal, special or regular, of the governing bodies of all municipalities, counties, townships, and school districts and all boards, bureaus, commissions, or organizations of the State of Arkansas, except grand juries, supported wholly or in part by public funds or expending public funds, shall be public meetings.
It is my opinion that the White River Levee District is subject to the Arkansas FOIA. Therefore, the special meetings of the board of directors that are called for the purpose of conducting levee board business must be conducted as open public meetings in compliance with the FOIA.
Question 2 — If our business meetings must be open, should they be opento the public at large or just to the taxpayers of record?
The open meetings provision of the FOIA provides that meetings governed by the act shall be "public meetings." A.C.A. § 25-19-106(a). The Arkansas Supreme Court has stated that the first rule in considering the meaning of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. MountainHome Sch. Dist. v. T.M.J. Builders, 313 Ark. 661, 858 S.W.2d 74 (1993). Further, the FOIA is to be liberally interpreted to the end that its praiseworthy purposes may be achieved. Swaney v. Tilford, 320 Ark. 652,898 S.W.2d 462 (1995). It is my opinion that use of the term "public meetings" mandates that the meetings be open to the public at large. It is my opinion that this conclusion is supported by the policy statement of the FOIA which provides that public business shall be performed in an open and public manner. Also, A.C.A. § 25-19-105 (Supp. 1995) provides that all public records shall be open to any citizen of the State of Arkansas. If the legislature intended for meetings to be open only to "taxpayers," it seems clear that they would have so specified.
Question 3 — Are we considered a governing body of the State ofArkansas?
Please see my response to Question 1.
Question 4 — Can the vote by the board of directors on any motion ororder of business be by secret ballot or must it be open and public?
It is my opinion that ballots may be used, but they must be signed and made available for public inspection. See Op. Att'y Gen. No. 92-124; seealso Depoyster v. Cole, 298 Ark. 203, 766 S.W.2d 606 (1989). InDepoyster, the court concluded that under the FOIA the use of unsigned written ballot slips, and the failure to retain the voting slips, violated the overall intent of the FOIA. In accordance, this office has previously opined that in order for the public to see how their officials are performing their official duties, ballot slips should be signed. Op. Att'y Gen. No. 92-124. We also concluded that the slips, as public records, should be made available for public inspection. Id.
Question 5 — One board member has stated that the levee belongs to theState of Arkansas . . . How can this be since the entire cost and expenseof the levee has been borne by the landowners in the levee district?
Although lands held by the White River Levee District are held for governmental purposes, it is my opinion that any lands held in the name of the levee district are in fact the property of the levee district. The Arkansas Supreme Court has stated that lands held by a drainage or improvement district are held by a governmental agency and for governmental purposes. See Quapaw Cent. Business Improvement Dist. v.Bond-Kinman, Inc., 315 Ark. 703, 870 S.W.2d 390 (1994); Terry v. Starks,221 Ark. 870, 256 S.W.2d 545 (1953). The court, however, has recognized that an improvement district, including a levee improvement district, may hold property. See Pulaski County v. Carriage Creek Improv. Dist.,319 Ark. 12, 888 S.W.2d 652 (1994). In fact, Special Act 97 of 1911 conferred upon the White River Levee District the authority to hold title to property. Special Act 97 of 1911, §§ 3 7.
Question 6 — What steps should we take to have the candidates for thedirectors positions declare their desire to run for these positions earlyenough to have ballots printed?
Levee districts are clothed with such powers as are expressly conferred or arise by necessary implication. Hart v. Steenberg, 205 Ark. 929,171 S.W.2d 475 (1943). Section 8 of Special Act 97 of 1911 principally governs the elections to be held at landowner conventions. A convention must be held on the first Monday in May every other year; notice of the convention must be published once a week for two weeks. At each such convention, at least one director is elected. Section 11 of the act provides that no person who does not own land subject to taxation within the district may be elected as a director. Further, the person must own lands within the county for which he is elected. Special Act 97, however, does not specify any procedures regarding a candidates declaration for the position or the actual conduct of the election. The secretary of the convention is simply directed to deliver to the county court of the county for which the directors are elected a report stating the name of the person elected as director by the convention.
Initially, it is my opinion that Special Act 97 does not prohibit the board of directors from requiring that all interested candidates file for the position of director at some reasonable time prior to the landowner convention. Further, section 2 of Special Act 97 provides that the board of directors may make by-laws and regulations not inconsistent with law for the conduct of the affairs of the district. It is my opinion that, pursuant to section 2, the board of directors may make by-laws and regulations for the conduct of the elections at the landowner conventions. The by-laws and regulations, however, cannot be inconsistent with the procedures outlined in Special Act 97 or any other law. Thus, while the board of directors could not change the eligibility requirements for holding the office of director, it appears that the board could enact regulations regarding the conduct of the election.
Question 7 — The right of way that was purchased for construction of thelevee was not used in its entirety for this purpose. These property lineswere not marked and maintained to the extent that they would berecognizable by the adjacent landowners or the public at large. Some ofthis levee district property has been cleared of trees and has beenfarmed by the adjoining landowners for a number of years. Can thisproperty be taken by adverse possession by these occupants? If so, arethere any steps we could take to regain title to this property?
Generally, it is my opinion that the rights of a levee district can be barred by adverse possession. Arkansas Code Annotated § 22-1-204 (1987) provides that "No title or right of possession to realty by an incorporated town, second class city, first class city, school district, county, or the state may be defeated in any action or proceeding because of adverse possession." I can find no comparable provision that flatly prohibits the title or right of possession to realty by a levee district from being defeated in an action because of adverse possession. In fact, the Arkansas Supreme Court has stated that the rights of an improvement district may be barred by adverse possession. Honeycutt v. Sherrill,Trustee, 207 Ark. 206, 179 S.W.2d 693 (1944); Hart v. Steenberg,205 Ark. 929, 171 S.W.2d 475 (1943).
Because this office is not in a position to make factual determinations, I cannot render an opinion on whether the occupants of the property referred to in your question could successfully establish title by adverse possession or whether there are any steps that could be taken to defeat such a claim. The Arkansas Court of Appeals recently set out the requirements necessary to establish title by adverse possession:
 It is well settled that, in order to establish title by adverse possession, appellee had the burden of proving that she had been in possession of the property continuously for more than seven years and that her possession was visible, notorious, distinct, exclusive, hostile, and with intent to hold against the true owner. The proof required as to the extent of possession and dominion may vary according to the location and character of the land. It is ordinarily sufficient that the acts of ownership are of such a nature as one would exercise over her own property and would not exercise over that of another, and that the acts amount to such dominion over the land as to which it is reasonably adapted.
Moses v. Dautartas, 53 Ark. App. 242, 922 S.W.2d 345 (1996); see also
A.C.A. § 18-11-106 (Supp. 1995) (establishes additional requirements regarding payment of ad valorem taxes for establishing adverse possession of real property). In Moses, the court recognized that whether possession is adverse to the true owner is a question of fact. This type of factual determination is outside the scope of an Attorney General opinion.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Warren T. Readnour.
Sincerely,
WINSTON BRYANT Attorney General
WB:WTR/cyh
[1] Although Special Act 97 refers to a tax, special assessments are not "taxes" in the usual and ordinary meaning of the word. The word "taxes" refers to exactions laid by the government for purposes of general revenue, and the word "assessments" refers to exactions laid for making local improvements for the benefit of property owners. Rainwaterv. Haynes, 244 Ark. 1191, 428 S.W.2d 254 (1968).