The Honorable Steve Higginbothom State Senator Post Office Box 242 Marianna, Arkansas 72360-0242
Dear Senator Higginbothom:
I am writing in response to your request for an opinion on several questions concerning the Helena-West Helena Phillips County Port Authority ("Authority"). Specifically, you note that the Authority was established under A.C.A. §§ 14-185-101—137 (Repl. 1998), which is entitled the "Metropolitan Port Authority Act of 1961." You state that the Authority was created by order from the Phillips County Circuit Court (Number 71-120). You pose five questions regarding the Authority, as follows:
 1. Are Port Authorities required to create and maintain official bylaws which include general guidelines that describe duties of its members, office holders, bidding practices, procurement procedures, etc.?
 2. Is it required that official bylaws contain specifics for calling roll, outlining voting procedures, methods for recording and retaining votes, etc., and are these particulars at the board's discretion?
 3. Should a member abstain from voting on a matter from which the member or member's company or business may monetarily gain?
 4. Are any ethical violations enforceable for such actions, and if so, by whom?
 5. Is it a violation of state law to solicit bids on projects for personal gain?
RESPONSE
In my opinion the answer to your first question depends upon the type of regulation sought to be imposed by the "bylaws." The Authority is required to adopt a "resolution" fixing the duties of its own officers. In other cases, the Authority isauthorized, but not required, to adopt bylaws governing the manner in which the business of the Authority may be transacted. In response to your second question, although the Authority is not generally required to adopt "by-laws" governing the issues you enumerate in your second question, it has the power to adopt rules to govern its own proceedings. In the absence of any such rules, the items you mention will be controlled by any applicable statutes, and failing that, by general parliamentary law. In my opinion the answer to your third question is generally "yes." In response to your fourth and fifth questions, the answers will depend upon the facts of a particular situation.
Question 1 — Are Port Authorities required to create andmaintain official bylaws which include general guidelines thatdescribe duties of its members, office holders, biddingpractices, procurement procedures, etc.?
In my opinion the answer to this question depends upon the type of regulation sought to be imposed by the "bylaw." For example, your first question references, at least in part, bylaws governing the "duties of its . . . office holders." If by this reference you mean to inquire whether the Authority is required to adopt bylaws regarding the duties of the Chairman, Secretary and Treasurer of the Authority, § 14-185-106(g) (Repl. 1998) requires that the duties of these officers be set by "resolution" of the board:
 (g)(1)(A) The board of each authority shall select one (1) of its members as chairman, one (1) of its members as secretary, and one (1) of its members as treasurer.
 (B) The offices of secretary and treasurer may be combined and held by one (1) member.
 (2) The term and duties of the officers shall be fixed by resolution of the board of each authority.
 (Emphasis added).
I have not found any similar provision in the applicable subchapter requiring the Authority to adopt bylaws or resolutions regarding the other substantive items you mention, including the "duties of members," "bidding practices," and "procurement procedures." There is a provision, however, thatempowers the Authority to do so:
 In order to enable authorities to carry out the purposes of this chapter, the authorities shall:
 * * *
 Have the power to adopt, alter, or repeal from time to time its own bylaws, rules, and regulations consistent with this chapter governing the manner in which the business of the authorities may be transacted and in which the purposes and powers may be transacted and in which the purposes and powers of the authorities may be accomplished and carried out. . . ."
 A.C.A. § 14-185-109(9) (Repl. 1998).
In response to your first question, therefore, although the Authority is not required to adopt "bylaws" governing most of the items you enumerate, it has the power to do so. Any such bylaws must of course be consistent with any applicable Arkansas law.
Question 2 — Is it required that official bylaws containspecifics for calling roll, outlining voting procedures, methodsfor recording and retaining votes, etc., and are theseparticulars at the board's discretion?
In my opinion the Authority is authorized, but not required, to adopt "bylaws" governing such procedural issues. Such bylaws must be in compliance with any applicable statutes or other controlling law, however. Except to the extent the issue is one dictated by statute or other controlling law, these types of procedural matters are, in my opinion, indeed "at the board's discretion." In the absence of any rules of proceedings adopted by the Authority, general parliamentary law will apply.
This question inquires as to matters more procedural in nature than your first question. It is generally stated that "[d]eliberative bodies have the right to adopt rules of procedure." 67A C.J.S. Parliamentary Law § 2. Such rules, however, must be exercised in conformity with existing laws.Id. In the absence of rules prescribed by statute or adopted by the governing body, the general parliamentary law prevails. See,e.g., Op. Att'y Gen. 2006-034 ("in the absence of statutory guidance or local procedural rules, standard rules of parliamentary procedure will apply, such as Roberts Rules of Order"). See also, Op. Att'y Gen. 2004-326, citing Op. Att'y Gen 98-282; Op. Att'y Gen 95-152 (citing 62 C.J.S. Municipal Corporations § 400(a) (1949)); and 62 C.J.S. Municipal Corporations § 232(a) (Supp. 2004).
Thus, although the Authority is authorized to adopt "bylaws" covering such items as "calling roll . . . voting procedures, methods for recording and retaining votes," it is not required
to do so. In the absence of any specific bylaws in this regard, applicable statutes or other controlling law may dictate the issue. See, e.g., A.C.A. §§ 25-19-101 — 109 (Repl. 2002) and (Supp. 2005) (the "Arkansas Freedom of Information Act") andDepoyster v. Cole, 298 Ark. 203, 766 S.W.2d 606 (1989),overruled on other grounds, Harris v. City of Fort Smith,
(Ark.Sup.Ct. 05-965, May 4, 2006), 158 S.W.3d 733 (2006) (holding that the use of unsigned written ballot slips, and the failure to retain the voting slips, violated the overall intent of the FOIA).
If an applicable statute or other controlling law does not address the particular item at issue, and there are no rules of proceedings adopted by the Authority, general parliamentary law, such as Robert's Rules of Order, will apply, as noted above.
Question 3 — Should a member abstain from voting on a matterfrom which the member or member's company or business maymonetarily gain?
In my opinion the answer to this question is "yes." There are no provisions in the applicable subchapter (A.C.A. §§14-185-101—137), addressing conflicts of interest or recusal of Authority board members. Nonetheless, in my opinion common law principles dictate that an individual board member abstain from voting on a matter in which the member may gain monetarily. As I stated in Op. Att'y Gen. 2006-066:
 The common law prohibition against conflicts of interest is reflected in the following description of the public policy underlying the principle:
 A public office is a public trust . . . and the holder thereof may not use it directly or indirectly for personal profit, or to further his own interest, since it is the policy of law to keep an official so far from temptation as to insure his unselfish devotion to the public interest. Officers are not permitted to place themselves in a position in which personal interest may come into conflict with the duty which they owe to the public, and where a conflict of interest arises, the office holder is disqualified to act in the particular matter and must withdraw. [Citations omitted.]
 The above-quoted policy statement concerning conflicts of interest makes clear that in situations where a common law conflict of interest is present, it may be appropriate for the affected public servant to abstain from participating in any decision-making procedure that would impact upon his or her personal interests, so as to avoid the temptation of placing his self-interest above those he was chosen to represent.
Op. Att'y. Gen. 2006-066 at 6, quoting Op. Att'y. Gen.2004-160. See also, Ops. Att'y Gen. Nos. 2004-106; 2002-273; 2001-042; 2000-072; 99-349; 98-275; 94-283; and 94-446, citingVan Hovenberg v. Holman, 201 Ark. 370, 144 S.W.2d 719 (1940);Madden v. United States Associates, 40 Ark. App. 143,844 S.W.2d 374 (1992); Acme Brick Co. v. Missouri Pacific R.R.,307 Ark. 363, 821 S.W.2d 7 (1991); and 63A Am.Jur.2d, PublicOfficers and Employees § 321.
Reference should also be made to the conflict of interest provisions in the Arkansas Code that apply to public officials and state employees.[1] In this regard, A.C.A. §21-8-304(a) (Supp. 2001) provides the following:
 No public official or state employee shall use or attempt to use his or her official position to secure special privileges or exemption for himself or herself or his or her spouse, child, parents, or other persons standing in the first degree of relationship, or for those with whom he or she has a substantial financial relationship, that is not available to others, except as may be otherwise provided by law.
As my predecessor noted in Op. Att'y Gen. 2002-297, "This provision codifies certain aspects of the common law conflict of interest principle. As with the common law rule, evaluating the situation under this Code section requires a factual determination." Id. at 4.
In my opinion, therefore, the answer to your third question is "yes" a member should abstain from voting on a matter in which the member or member's company or business may monetarily gain.
Question 4 — Are any ethical violations enforceable for suchactions, and if so, by whom?
Violations of A.C.A. § 21-8-304 are prosecutable by the local prosecuting attorney and in some situations by any citizen. This is in accordance with A.C .A. § 21-8-303, which provides:
 (a)(1) It shall be the duties and responsibilities of the prosecuting attorneys of this state to supervise compliance with this subchapter and to prosecute persons who violate the provisions of this subchapter.
 (2) However, the Arkansas Ethics Commission shall also have authority to investigate and address alleged violations of this subchapter.[2]
 (b)(1) In the event the prosecuting attorney shall fail or refuse to enforce the provisions of this subchapter when the facts are known by him or her, or called to his or her attention, any citizen of this state may bring action in circuit court to force compliance with this subchapter.
 (2) The citizen shall be entitled to receive reimbursements for expenses and reasonable attorney's fees upon the successful outcome of such litigation.
There is also case law authority for the proposition that individual citizens may bring taxpayers' actions under Arkansas Constitution, Article 16, § 13, to prevent unlawful common law conflicts of interest. See, e.g., Warren v. Reed, 231 Ark. 714331 S.W.2d 847 (1960) (holding laundry contract with member of County Hospital Board of Governors to provide laundry services to hospital "null and void" after instigation of suit by taxpayer, even though no fraud was shown and board member submitted the lowest bid). The court in Warren v. Reed stated that: ". . . a contract with a member of a board of public body or in which a member thereof is interested, is unenforceable, even though there is no statute directly prohibiting such a contract." In my opinion, therefore, depending upon the particular facts, violations may be enforced by the prosecuting attorney, the Arkansas Ethics Commission, or individual citizens.
Question 5 — Is it a violation of state law to solicit bids onprojects for personal gain?
The answer to this question would require reference to the individual facts and cannot be answered in the abstract. The principles and statutes discussed above, however, should be of assistance in addressing this question.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] Section 21-8-304, which prohibits "public officials" and "state employees" from using or attempting to use their official positions to secure special privileges for themselves, applies in my opinion to port authority board members. Although A.C.A. §21-8-402 (17) defines a "public official" as a legislator or any other person holding an elective office of any governmental body" (emphasis added), this definition does not appear to govern or define the term "public official" as used in A.C.A. §21-8-304. See A.C.A. § 21-8-402 (introductory language) (applying the definitions of that section to A.C.A. § 21-8-401et seq.; A.C.A. §§ 21-8-601 et seq.; -701 et seq.; and -801et seq.; but not -301 et seq.). See also, Op. Att'y. Gen.2004-230 (opining that A.C.A. § 21-8-304 was the applicable provision as to regional intermodal facilities authority members, rather than A.C.A. § 14-14-1202, pertaining to counties and14-42-107, pertaining to municipalities).
[2] I must defer to the Ethics Commission for the proper application or interpretation of its own rules and regulations.