The Honorable Jack Crumbly State Senator 1823 SFC 414 Widener, AR 72394-9404
Dear Senator Crumbly:
I am writing in response to your request for an opinion concerning a proposed ordinance of the City of West Memphis entitled:
 AN ORDINANCE ESTABLISHING A MUNICIPAL HUMAN AND CIVIL RIGHTS COMMISSION TO APPRAISE, REVIEW, INSPECT AND INVESTIGATE ALL PRACTICES OF HUMAN AND CIVIL RIGHTS AND PERSONAL DIGNITY STANDARDS WITHIN THE CITY'S PUBLIC MUNICIPAL AGENCIES AND TO APPRAISE, REVIEW, INSPECT AND INVESTIGATE ALL FORMS OF INVIDIOUS DISCRIMINATION, WHETHER CARRIED OUT LEGALLY OR ILLEGALLY, BY PUBLIC MUNICIPAL AGENCIES AND PUBLIC MUNICIPAL EMPLOYEES
You have asked, specifically, whether this proposed ordinance is constitutional.
RESPONSE
As discussed further below, the proposed ordinance in my opinion gives rise to several constitutional issues and concerns, under both state and federal law. I cannot, however, definitively state whether it passes constitutional muster in all respects because this entails interpreting the ordinance to ascertain the original intent. Although the Attorney General is charged with the duty to issue formal opinions on questions of state law posed by enumerated officials (A.C.A. § 25-16-706 (Repl. 2002)), *Page 2 
this office is not authorized or equipped to construe local ordinances.See Op. Att'y Gen. 2004-235 (noting that the opinion rendering function of this office is not an appropriate vehicle for interpreting local ordinances). My opinion must therefore be limited to a discussion of pertinent state and federal law bearing on the ordinance's constitutionality. I can say in this regard that the provision making "privileged" those "opinions expressed and votes cast" by members of the proposed "Human and Civil Rights Commission" is likely contrary to the Arkansas Freedom of Information Act, and therefore unconstitutional because it is contrary to state law. Additionally, because it is unclear just how the Human and Civil Rights Commission would admonish a "municipal agency," some consideration must in my opinion also be given to the mayor's disciplinary authority over municipal officers, pursuant to A.C.A. § 14-43-504 (Repl. 1998). This latter statute may also be implicated in connection with reprimands of police officers, fire fighters, and others employed by the city who might be considered municipal officers. Finally, a note of caution regarding the Commission's grant of authority to conduct "hearings" and "proceedings," and to "take legal action in situations deemed necessary," is warranted, given the ordinance's failure to articulate what these matters might entail.
It will be helpful before discussing these concerns to first set out what in my view are the ordinance's most relevant provisions for purposes of determining its constitutionality. It proposes to create a "Human and Civil Rights Commission," also known as "The West Memphis Justice Department" (hereinafter "Commission"), "for investigative purposes, hearings, reviews, and inspections of alleged discrimination and or human and civil rights violations, involving any West Memphis public municipal agency or public municipal employee including alleged municipal police misconduct and the provisions or distribution of any city facilities, services, programs, or amenities." Proposed Ordinance at para.1. The Commission would "have the authority to issue oral or written reprimands and or votes of no confidence against any public municipal agency or public municipal employee the commission finds in violation of policies or laws concerning discrimination or human and civil rights, unethical conduct, misconduct or in the administration of justice; along with a written reason for its finding signed by a majority of commissioners, and to make recommendations to the city council and mayor to correct the incident or issue." Id. at para. 8. The ordinance would also authorize the "disposition of any case by the . . . Commission" to be "forwarded to the courts, legislative, and/or executive agencies[;]" and the Commission would be authorized to "take legal action in situations deemed necessary to accomplish its purposes and duties." Id. at para. 11. Persons alleging "discrimination or violation *Page 3 
of their human and civil rights by any city public municipal agency or public municipal employee" could "submit their complaint in writing to the mayor or any alderman for referral to the commission for review, investigation and or recommendation." Id. at para. 14. And "opinions expressed and votes cast" by members of the Commission would be "privileged." Id. at para. 20.
DISCUSSION
The Arkansas Constitution provides that "[n]o municipal corporation shall be authorized to pass any laws contrary to the general laws of the state[.]" Ark. Const. art. 12, § 4. This principle is further enunciated by the Arkansas Code. See, e.g., A.C.A. A.C.A. §§ 14-43-601; 14-54-101;14-55-101. Additionally, as the Arkansas Supreme Court has made clear, municipalities have no inherent powers, but only the powers expressly given them by the state through the constitution or by legislative grant, and then only so much power incident to such grants as are necessary to fully effectuate them. Pfeifer v. City of Little Rock,346 Ark. 449, 57 S.W.3d 714 (2001); Cosgrove v. City of West Memphis,327 Ark. 324, 326, 938 S.W.2d 827 (1997). Moreover, substantial doubt as to the existence of a power in a municipal corporation must be resolved against it. Cosgrove, supra, citing City of Little Rock v. Cash,277 Ark. 494, 501, 644 S.W.2d 229 (1982).
Accordingly, the validity of this proposed ordinance depends in the first instance upon the authority granted by the Arkansas Constitution or the General Assembly. In this regard, there is no provision in state law expressly authorizing the creation of a commission such as this, with review and investigatory authority respecting alleged civil rights violations or other misconduct by municipal agencies and employees. However, the state has authorized municipalities to legislate under the so-called "police power" by giving them "the power to make and publish bylaws and ordinances, not inconsistent with the laws of this state, which, as to them, shall seem necessary to provide for the safety, preserve the health, promote the prosperity, and improve the morals, order, comfort, and convenience of such corporations and the inhabitants thereof." A.C.A. § 14-55-102 (Repl. 1998) (popularly termed the "general welfare clause," City of Fort Smith v. Van Zandt, 197 Ark. 91, 94,122 S.W.2d 187 (1938)). Although I have found no helpful Arkansas case law, this "general welfare clause" in my opinion likely provides the basic foundational authority for an ordinance such as this. Perhaps consistent with this observation, one of my predecessors, when presented with a similar ordinance, opined that "[Arkansas] cities have the authority to create commissions for a variety *Page 4 
of purposes, including the purpose of monitoring and reporting on human and civil rights violations." Op. Att'y Gen. 2001-283.
The General Assembly has also empowered cities generally to enact provisions concerning "municipal affairs." A.C.A. § 14-43-601(a)(1) and — 602 (Repl. 1998). "Municipal affairs" are defined as "all matters and affairs of government germane to, affecting, or concerning the municipality or its government," except certain matters that are deemed "state affairs." A.C.A. § 14-43-601. I note that the disciplining of city employees is not listed among the "state affairs" identified under this statute. Accordingly, consistent with an opinion issued by one of my predecessors, Op. Att'y Gen. 2000-283, I believe "a matter such as the discipline of city employees constitutes a municipal affair . . . and that the city council would have the power, under its general authority to direct municipal affairs, to address such matters." Id. In my opinion, this is a likely source of authority, generally, for those provisions of the ordinance empowering the Commission to investigate and take disciplinary action against municipal agencies and employees.
Despite these grants of authority, however, it must be recognized, as noted above, that municipal corporations in Arkansas cannot pass any laws contrary to the general laws of the State. Ark. Const. art. 12, 4;Nahlen v. Woods, 255 Ark. 974, 504 S.W.2d 749 (1974). The Arkansas Supreme Court also appears to have taken a strict view of a municipality's authority over "state affairs." See City of Fort Smith v.Fort Smith Housing Authority, 256 Ark. 254, 506 S.W.2d 534 (1974) (housing authority is not a municipal affair and city council cannot substitute its own method of filling vacancies which occur on the board). I note in this regard that the topic of "public information and open meetings" is a "state affair." A.C.A. § 14-43-601(a)(1)(A). This has implications for paragraph 20 of the proposed ordinance wherein it provides that "opinions expressed and votes cast [by commissioners] shall be privileged."
Pursuant to the Arkansas Freedom of Information Act ("FOIA"), meetings of "governing bodies" must be held in public, A.C.A. § 25-19-106(a) (Supp. 2007), although the FOIA does allow for "executive [i.e. closed] sessions" to be held for the purpose of addressing certain personnel matters. Id. at (c)(1). This office has consistently opined that the pertinent question in determining whether a group constitutes a "governing body" is whether the group has decision-making authority. See Op. Att'y Gen. 2006-059 and opinions cited therein. Because the ordinance clearly contemplates decision-making by the Commission — see paragraph 9 regarding the issuance of reprimands and votes of no confidence, and *Page 5 
paragraph 12 referring to "the majority decision, [or] opinion" — the provision making Commission opinions and votes "privileged" is contrary to state law, and therefore unconstitutional, to the extent it would authorize closure of sessions that must be open under the FOIA. It also appears to contravene the FOIA's requirement respecting closed, "executive" sessions, that public bodies reconvene and vote in public session (A.C.A. § 25-19-106(c)(4)), and that the individual votes be made public. See Depoyster v. Cole, 298 Ark. 203, 766 S.W.2d 606 (1989). There may also be some question whether by making opinions and votes "privileged," the ordinance intends to shield from public inspection any records of same. This would also seem to be contrary to the FOIA. See
A.C.A. § 25-19-105 (open record requirement).
Some discussion of the Commission's authority to reprimand municipal agencies and employees is also necessary in light of certain disciplinary authority granted to the mayor under state law. Specifically, A.C.A. §14-43-504 provides in pertinent part:
 (b) The mayor shall:
 (1) Supervise the conduct of all the officers of the city, examine the grounds of all reasonable complaints made against them, and cause all their violations of duty or other neglect to be properly punished or reported to the proper tribunal for correction[.]
A.C.A. § 14-43-504(b)(1) (Repl. 1998).
As my immediate predecessor had occasion to note, "[t]he [Arkansas] Code is unfortunately silent as to the scope of the mayor's authority in `properly punishing' city officers for transgressions." Op. Att'y Gen.2004-050. More particularly respecting the proposed ordinance at issue, it is unclear whether subsection 14-43-504(b)(1)'s grant of authority to the mayor forecloses the assignment of such disciplinary power to some other city entity. I have found no helpful authority on this point.
In my opinion, however, the proposed ordinance is at least suspect to the extent it might be interpreted to vest in the Human and Civil Rights Commission disciplinary authority that has been granted to the mayor by A.C.A. § 14-53-504(b)(1). I cannot offer a more definitive opinion in this respect, in part because it is unclear whether in authorizing the Commission to admonish a "municipal *Page 6 
agency" or a "municipal employee," the ordinance even proposes to extend such admonitory power over city officers. I will note, however, that it seems clear police officers are covered. See Proposed Ordinance, para. 1 (referring to "alleged police misconduct.") Presumably, fire fighters are similarly covered. It therefore bears noting that in my opinion, the mayor's disciplinary authority over "officers of the city," A.C.A. § 14-53-504(b)(1), may well extend to such police officers and fire fighters. Cf. Ops. Att'y Gen. 91-415 (opining that A.C.A. §14-42-107(a)(2)'s proscription against a city council member's appointment to a "municipal office" encompasses the position of police officer) and 91-314 (police officers are "public officers" and hold a "civil office under this state" for purposes of Ark. Const. art. 5, § 10, which provides that: "No Senator or Representative, during the term for which he shall have been elected, be appointed or elected to any civil office under this State."). Subsection 14-53-504(b)(1)'s applicability to such officers clearly has implications for purposes of critiquing the Commission's admonitory power under the ordinance, although I am unable for the reasons stated above to reach any definitive conclusions.
Some mention must also be made of the Commission's authority to conduct "hearings" and "proceedings," and to "take legal action in situations deemed necessary." See Proposed Ordinance at para's. 1, 10 and 11. This language is unduly vague, in my view, making it difficult to analyze from a constitutional standpoint. The ordinance is not clearly objectionable on this basis, but I must note that the failure to clearly articulate what these "hearings," "proceedings" and "legal action" might entail could lead to challenges.
As a final matter, I have considered whether the ordinance might give rise to claims under the federal Due Process Clause, U.S. Const. amend.XIV, § 1, (providing that the government shall not "deprive any person of life, liberty, or property, without due process of law"), in light of the stigmatization that may result from a reprimand or "vote of no confidence" issued by the Commission. I note in this regard that the United States Supreme Court has rejected the proposition that a stigmatizing statement standing alone can support a claim based on procedural due process. Paul v. Davis, 424 U.S. 693 (1976) (requiring some tangible alteration of "status" in addition to an injury in reputation to make out a cognizable liberty interest.) The Court in Paul also made it clear that the constitution does not require the government to give to its stigmatized employee a hearing if the public employee remains a public employee. Id. at 710. Accordingly, the mere fact that the Commission might stigmatize a officer or employee by reprimanding him or her, or by issuing a "no confidence" vote, without a so-called "name clearing" hearing, *Page 7 
will not alone establish a Due Process claim. However, courts have held that either discharge or foreclosure of a future opportunity satisfies the Paul requirement for more than mere defamation. See Doe v.United States Dept. of Justice, 753 F.2d 1092,1110 (D.C. Cir. 1985) (emphasis added) (observing that "an overwhelming majority of the circuits have explicitly concluded that a nontenured, at-will government employee states a liberty interest claim after Paul when discharged or foreclosedfrom future government employment amidst stigmatizing allegations by thegovernment.")
The prospect of procedural Due Process violations, while not fatal to the ordinance's constitutionality, may be a matter of concern to be referred to the city's local counsel for further analysis.
It is apparent from the foregoing that I am unable to definitively opine whether the proposed ordinance submitted for my review passes constitutional muster in all respects. However, this opinion will hopefully offer some guidance in the matter.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely, DUSTIN McDANIEL Attorney General *Page 1