Hon. Timothy D. FOX, in his Official Capacity as Circuit Judge
for the Sixth Judicial District of Arkansas *v.* Samuel A. PERRONI
and Patrick R. James

03-1230 188 S.W.3d 881

Supreme Court of Arkansas
Opinion delivered June 24, 2004

*Mike Beebe*, Att'y Gen., by: *C. Joseph Cordi, Jr.*, Ass't Att'y Gen., for appellant.

*Perroni, James & House, P.A.,* by: *Matthew R. House,* for appellant.

A̲NNABELLE CLINTON IMBER, Justice. This case arose out of the same circumstances as a companion case submitted to this court, *Perroni v. State,* No. 03-878, slip op. (June 17, 2004), in which attorney Sam Perroni was held in criminal contempt by the Honorable Timothy D. Fox, Pulaski County Circuit Judge. In the course of defending himself in the contempt case, Mr. Perroni and his attorney, Patrick R. James, directed a request for documents to Judge Fox pursuant to the Freedom of Information Act (FOIA), codified at Ark. Code Ann. § 25-19-101 *et seq.* (Repl. 2002). Judge Fox turned over the requested documents with the exception of a check written on his law clerk's personal checking account. Mr. Perroni and Mr. James sued Judge Fox under the FOIA for release of the check, and the trial court found the check was a "public record" as defined by the FOIA, and that Judge Fox was in "administrative control" of the check and, therefore, was the correct person to whom an FOIA request for the check should be directed. Judge Fox appeals, contending (1) the check is not a "public record" under the FOIA and (2) even if the check is a public record, he is not in "administrative control" of the check and, thus, is under no obligation to disclose the check to Mr. Perroni and Mr. James. We affirm the trial court.

The facts of the case are as follows. Mr. Perroni was charged by Judge Fox with contempt after Mr. Perroni missed a trial date in Pulaski County Circuit Court in which he was scheduled to appear as defense counsel. Mr. Perroni instead attended federal court to appear as defense counsel in the case of· *United States v. Pirani,* which was scheduled for trial on the same date. Judge Fox charged Mr. Perroni with contempt because he believed Mr. Perroni knew of the scheduling conflict several weeks to months in advance, but failed to inform Judge Fox of a need to reschedule the State case until only days before the court date. Judge Fox refused to reschedule the State case, ordered Mr. Perroni to show up for the trial date, and then charged Mr. Perroni with contempt when he did not do so.

In the contempt case, Mr. Perroni asked Judge Fox to recuse from the hearing, asserting that the judge had violated the Code of Judicial Conduct because he had independently investigated the circumstances of the alleged contempt; more particularly, Judge Fox had obtained copies of pleadings from federal court in order to

prove Mr. Perroni knew about the scheduling conflict months in advance of the court date. Judge Fox declined to recuse and used the documents he obtained from federal court as evidence that Mr. Perroni knew about the conflict for several months. With this evidence, Judge Fox found Mr. Perroni in contempt and, in addition to other penalties, assessed him $55.20 to reimburse the county's cost of obtaining the copies of the federal pleadings.

In an apparent attempt to bolster the charge that Judge Fox had independently investigated the contempt case, Mr. Perroni's attorney and law partner, Patrick R. James, made an FOIA request by letter dated March 19, 2003, for copies of various documents, including "copies of any and all documents related to the acquisition of pleadings" pertaining to the federal criminal case. The letter further requested Judge Fox to provide, "any and all documents which would evidence the source of funds for payment of the [pleadings]" including "checks, check stubs, check requisitions or any other related documents." Mr. James's letter stated that his firm agreed to pay copying costs associated with the production of the requested documents.

Pursuant to the FOIA request, Judge Fox provided copies of the receipts for payment made to obtain the federal pleadings as well as other documents requested. The receipts for payment of the certified copies of federal court documents showed total payments of $20.00 in cash and $35.20 by check; however, Judge Fox provided no copies of the check or checks given in payment. On March 25, 2003, Mr. James sent another letter to Judge Fox requesting records concerning the sources of the funds used to pay for the federal pleadings. Receiving no answer from the March 25 letter, Mr. James sent another letter on April 29, 2003, reminding Judge Fox of the FOIA request, and again asking for copies of records concerning the source of funds used to pay for the copies of federal pleadings. Mr. James asked Judge Fox to either provide the responsive documents or to state such documents did not exist. On April 30, 2003, Judge Fox responded by letter, stating that he had already made an appropriate response. Copies of the check or checks given in payment for the pleadings were not included in this response. When Mr. James saw Judge Fox in court on an unrelated matter and again asked about the FOIA request, Judge Fox responded that he would rather deal with the matter in writing. It was shortly after this oral request that Mr. James received Judge Fox's April 30 letter.

On May 5, 2003, Mr. Perroni and Mr. James filed a Freedom of Information Act complaint in Pulaski County Circuit Court, asserting that Judge Fox had not complied with the FOIA request as to the documents concerning the source of funds used to pay for the federal pleadings. The complaint further asserted that production of the requested records would help establish that Judge Fox had violated the Code of Judicial Conduct by independently investigating the contempt case over which he presided.

On May 12, 2003, Mr. James sent FOIA requests to Pulaski County Judge Buddy Villines, Marilyn Hicks of the Pulaski County Accounting Department, and Pulaski County Clerk Carolyn Staley, requesting copies of documents or records concerning payment made by Judge Fox to the federal court for the pleadings. Though Judge Fox had ordered Mr. Perroni to "reimburse" Pulaski County for the copies of the pleadings, he had not yet made a purchase requisition for reimbursement of his personal expenditure; therefore, the county officials had no records to provide to Mr. James.

On May 16, 2003, a hearing was held before the Honorable John W. Cole, Special Circuit Judge, on the FOIA complaint. The evidence showed that, in anticipation of the contempt hearing, Judge Fox had asked his law clerk, David Eanes, to go to the federal court and obtain copies of pleadings in the case of *United States v. Pirani*, the federal criminal case in which Mr. Perroni had appeared as defense counsel. Judge Fox had given Mr. Eanes twenty dollars in cash from his wallet to purchase the copies. Mr. Eanes went through the federal court files for approximately an hour and a half to decide which documents were needed. The cost of copying and certifying the documents was $55.20, so Mr. Eanes wrote a personal check for the balance of $35.20. When he arrived back at Judge Fox's chambers, Judge Fox immediately reimbursed Mr. Eanes in cash for the additional $35.20. Although both Judge Fox and Mr. Eanes were issued subpoenas *duces tecum*, neither of them produced a copy of the check written by Mr. Eanes.

The trial court found that the check was a "public record" under the FOIA, and that Judge Fox was the public official with administrative control over the check. Therefore, the trial court ruled in favor of Mr. Perroni and Mr. James in their lawsuit against Judge Fox alleging a violation of the FOIA. From this order, Judge Fox appeals.

### Jurisdiction and Standard of Review

This case was originally filed in the court of appeals, but the court of appeals certified it to us as an issue of first impression. Therefore, we have jurisdiction pursuant to Ark. Sup. Ct. R. 1-2(b)(1).

The appellees in this case cite us to the "clearly erroneous" standard of review used in the FOIA case of *Berry v. Saline Memorial Hospital*, 322 Ark. 182, 907 S.W.2d 736 (1995). However, in *Berry*, no FOIA issue was reached; instead, the issue was whether an attorney had a conflict of interest, and we held the trial court's findings *of fact* were not clearly erroneous. In the instant case, the trial court's findings of fact are not at issue. Instead, we are reviewing the trial court's conclusions of law — namely, the trial court's conclusion that the check was a "public record" as defined by the FOIA, and that Judge Fox had "administrative control" over the check as that term is used in the FOIA.

It is for this court to determine the meaning of a statute. *Arkansas Dept. of Health v. Westark Christian Action Council*, 322 Ark. 440, 910 S.W.2d 199 (1995). On review of an issue of statutory interpretation, we are not bound by the decision of the trial court; however, in an absence of a showing that the trial court erred in its interpretation of the law, that interpretation will be accepted as correct on appeal. *Bryant v. Weiss*, 335 Ark. 534, 983 S.W.2d 902 (1998). We liberally interpret the FOIA to accomplish its broad and laudable purpose that public business be performed in an open and public manner. *Id.* Furthermore, this court broadly construes the Act in favor of disclosure. *Id.*

### "Public Record"

The trial court determined that the check written by David Eanes was a "public record" as defined by the FOIA, notwithstanding the fact that the check was written on a joint personal checking account belonging to Mr. Eanes and his wife. The FOIA, codified at Arkansas Code Annotated § 25-19-101 *et seq.*, opens "all public records" for public inspection and copying. Ark. Code Ann. § 25-19-105(a) (Repl. 2002). The FOIA defines public records as follows:

> (5)(A) "Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium required by law to be kept or otherwise kept

and that constitute a record of the performance or lack of performance of official functions that are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.

Ark. Code Ann. § 25-19-103(5)(A) (Repl. 2002).

In *City of Fayetteville v. Edmark*, 304 Ark. 179, 801 S.W.2d 275 (1990), we held that memoranda prepared in anticipation of litigation by a city's outside counsel were public records under the FOIA. In so holding, we pointed out that the attorneys who wrote the memoranda were acting as the functional equivalent of a city attorney and were paid by public funds. *Id*. Therefore, the city could not avoid FOIA requirements by substituting a private attorney for the city attorney. *Id*. Likewise, in *Swaney v. Tilford*, 320 Ark. 652, 898 S.W.2d 462 (1995), where a state agency hired an outside auditing company to perform required audits, the working papers of the outside auditors were considered public records and the agency was required to provide access to them under the FOIA.

 Judge Fox argues that, because the FOIA request was directed to him, and he personally did not keep Mr. Eanes's check and was not required to keep the check, the check cannot be considered a public record under the FOIA. He further argues that the check is not a public record because it was not maintained in his office or maintained by Mr. Eanes within the scope of his employment. The FOIA provides that citizens may make a request to the custodian of public records to "inspect, copy, or receive copies of public records." Ark. Code Ann. § 25-19-105(a)(2)(A). The FOIA requests here were directed to Judge Fox as custodian of the check, and the FOIA's definition of "public record" does not require that the custodian be the person who actually keeps the document, nor does it say that the custodian must be required to keep the document. As to Judge Fox's argument that the check was not maintained in his office, the locus of the record is important only to determine whether the record falls under the *presumption* in § 25-19-103(5)(A) (Repl. 2002) (that records are *presumed* to be public records if they are "maintained in public offices or by public employees within the scope of their employment"). The definition of "public record" under the FOIA is not dependent upon

*who* keeps the record or where it is kept — just that it either is required to be kept or is otherwise kept. Here, though there appears to have been no requirement to keep the check, the check was indisputably "otherwise kept" by Mr. Eanes's bank, and is available, for a fee, to Mr. Eanes, the public employee who wrote the check.

Analyzing these facts in light of the language of the statute, we can see that (1) Mr. Eanes's check is a writing, (2) the check is "otherwise kept" at Mr. Eanes's bank, (3) the check is a record of Mr. Eanes's performance of an official function — purchasing copies of records to be used for evidence in a contempt case, and (4) the official function of purchasing documents was carried out by Mr. Eanes, a public employee, at the behest of Judge Fox, a public official. Furthermore, here, unlike the cases of *City of Fayetteville v. Edmark, supra,* and *Swaney v. Tilford, supra,* where an outside agency created the documents that were considered public records, it was actually a public employee who created the document in question. The fact that he created the document by using a private checking account does not negate the public function for which the check was used. As we stated in *City of Fayetteville v. Edmark,*

> The City cannot avoid the FOIA requirements by substituting a private attorney for the city attorney. To condone such logic would arguably enable public officials to shield from disclosure sensitive or controversial material by hiring an outside attorney instead of using its regular city attorney. The FOIA requirements cannot be circumvented by delegation of regular duties to one specially retained to perform the same task as the regular employee or official. This would be contrary to the requirements and intent of the FOIA.

304 Ark. at 186-87, 801 S.W.2d at 279.

Here, Judge Fox spent money to purchase certified copies of documents used by him as evidence in a criminal contempt case. There is no question that a check for this purchase written on Pulaski County's bank account would be a public record subject to the requirements of the FOIA. As in *City of Fayetteville v. Edmark, supra,* Judge Fox cannot shield from disclosure the records of his actions merely because the check was drawn on a private bank to perform the same function that would have been performed using a properly drawn "public" check.

■ Because the check drawn on Mr. Eanes's private checking account is a writing, otherwise kept, that constitutes the record of the performance of an official function carried out by a public official through his employee,[1] we hold that Mr. Eanes's check is a public record subject to the FOIA. Accordingly, we affirm the trial court on this point.

### "Administrative Control"

After determining that the check was a public record, the trial court determined that Judge Fox had administrative control over the check pursuant to the FOIA. The FOIA provides for the examination and copying of public records:

(a)(2)(A) A citizen may make a request to the custodian to inspect, copy, or receive copies of public records.

(B) The request may be made in person, by telephone, by mail, by facsimile transmission, by electronic mail, or by other electronic means provided by the custodian.

(C) The request shall be sufficiently specific to enable the custodian to locate the records with reasonable effort.

(3) If the person to whom the request is directed is not the custodian of the records, the person shall so notify the requestor and identify the custodian, if known to or readily ascertainable by the person.

\* \* \* \*

(e) If a public record is in active use *or storage* and therefore not available at the time a citizen asks to examine it, the custodian shall

---

[1] The dissent argues that the reason Mr. Eanes's personal check does not fit the definition of a public record is that the bank "is not keeping it *because* it constitutes a record of acts by a public employee." (Emphasis added.) The dissent seems to argue that the bank's motivation for keeping the check is at issue in deciding whether the check is a public record. While it is true that two of the elements of a "public record" are that the record must be kept and it must constitute a record of an official function performed by a public employee, these two elements are not causally-related. It matters not *why* the bank keeps the check — only that it is kept. That the bank keeps the check because it is the bank's normal practice to do so does not change the fact that each element of the definition of "public record" is met by Mr. Eanes's check and it is, therefore, a public record.

> certify this fact in writing to the applicant and set a date and hour within three (3) working days at which time the record will be available for the exercise of the right given by this chapter.

Ark. Code Ann. § 25-19-105(a)(2), (a)(3), (e) (Repl. 2002) (emphasis added).

Pursuant to subsection (a)(2)(A) and (B), Mr. James sent his request to Judge Fox by mail, and followed up with both mailed and oral requests when Judge Fox did not send all the requested documents. Pursuant to subsection (a)(2)(C)), the request specifically asked for "any and all documents which would evidence the source of funds" used to pay for the federal court documents, including "checks, check stubs, check requisitions or any other related documents." When Judge Fox did not provide copies of documents evidencing the source of the funds, Mr. James sent him a letter noting that the time for production of the documents had expired. Mr. James asked that Judge Fox either produce the requested documents or, if they did not exist, respond and state that they did not exist. Judge Fox did neither.

At the hearing, Judge Fox claimed that he was not the custodian of the check written by David Eanes and, therefore, was under no obligation to produce it under Ark. Code Ann. § 25-19-105. The FOIA defines the "custodian" of a public record as "the person having administrative control of that record." Ark. Code Ann. § 25-19-103(1)(A) (Repl. 2002). The circuit court's determination that Judge Fox had administrative control over the check was, in effect, a determination that Judge Fox was the custodian of the check.

The FOIA does not define the term "administrative control." Judge Fox's argument below and on appeal is that he did not have administrative control over the check because he had no authority to force Mr. Eanes to obtain a copy of his canceled check. Judge Fox further argues that no evidence was provided that either he or Mr. Eanes had ever seen the canceled check, and that the circuit court "confused Judge Fox's control over his court for control over his law clerk's private financial records held by the clerk's bank."[2]

---

[2] Judge Fox also makes the argument on appeal that he did not have administrative control over the check because federal banking laws would not allow him to obtain the

As stated previously, in *City of Fayetteville v. Edmark, supra,* we held that memoranda prepared by outside counsel for the City of Fayetteville were public records. Although the records were in the possession of outside counsel, we held they were not exempt from disclosure and the City was required to produce the documents.

Here, Judge Fox did not make a requisition for a payment voucher from Pulaski County's purchasing department in order to pay for the certified copies of the federal pleadings. Clearly, such a payment voucher would have been a public record obtainable under the FOIA. Instead, Judge Fox bypassed the county purchasing system and used cash to purchase the records he used in his contempt case against Mr. Perroni. The fact that Mr. Eanes used a personal checking account to make up the difference between the cost of the copies and the amount of cash Judge Fox gave him did not move the transaction outside the realm of the FOIA. This case parallels *City of Fayetteville v. Edmark* in that Judge Fox (through his law clerk) may not substitute a private bank account for a public bank account and then claim he does not have possession of or control over the resulting public record.

Similarly, in *Swaney v. Tilford,* 320 Ark. 652, 898 S.W.2d 462 (1995), we held that the Arkansas Development Finance Authority (ADFA) was required to produce working papers of outside auditors. In *Swaney,* the ADFA argued that, though it could produce the actual audits, the outside auditing firm had refused to release its working papers without a subpoena because the auditors considered the working papers confidential. *Id.* at 653, 898 S.W.2d at 463. The trial court found the ADFA was not obligated to obtain the outside firm's working papers. *Id.* We reversed, holding that it was the ADFA's responsibility to provide reasonable access for examination and copying of the records. Because the ADFA's arguments were almost identical to Judge Fox's arguments in this appeal, we quote our holding in *Swaney:*

> It is undisputed that the ADFA is not in possession of the records requested by the appellant. However, the statute clearly

canceled check without Mr. Eanes consent, and he cites to several federal banking statutes in support of this argument. However, this argument does not appear in the abstract, nor is it in his post-hearing brief. It is well-settled that we will not consider arguments made for the first time on appeal. *Arkansas Dept. of Human Servs. v. Huff,* 347 Ark. 553, 65 S.W.3d 880 (2002).

provides that a citizen have reasonable access to public records. The term "custodian of the records" has not been defined by statute or case law in Arkansas. The trial court found that the private [auditing firm] in this case was the custodian of the records and should therefore be subject to the Act.

Nevertheless, the legislative intent of the Act supports the proposition that the agency *must* provide reasonable access to the requesting citizen, where it is undisputed that the records requested are "public records" pursuant to the Act.

[The ADFA] argues that it does not have constructive possession or administrative control over the files of [the auditing firm], has in fact never seen the requested records, and that it cannot produce records it does not possess or have in its control. These factors are initially relevant to the determination of whether a document will be considered a public record .... Once that issue is conceded, the statutory scheme and the legislative intent of the Act *mandates that the burden be placed on the appropriate state agency* to make arrangements for reasonable access to the records in its office or the office of the private custodian. Appellee does not contend that it is otherwise not the appropriate governmental entity to which the FOI request should have been directed, nor was that issue developed or argued below.

We hold that where the records in question are established as "public records" pursuant to Ark. Code Ann. § 25-19-103(1) and not otherwise exempted from disclosure, the appropriate governmental agency, in this case the ADFA, shall have the responsibility to provide reasonable access for examination and copying of such public records which are in existence at the time of the request, as provided by Ark. Code Ann. § 25-19-105.

*Swaney v. Tilford*, 320 Ark. at 655-56, 898 S.W.2d at 464-65 (emphasis added).

Here, as the ADFA did in *Swaney*, Judge Fox argues that he does not have constructive possession or administrative control over Mr. Eanes's check, that he has never seen the check, and that he cannot produce it. Judge Fox also argues that *Swaney* is distinguishable from the instant case because the ADFA contracted

with the auditing agency in *Swaney*, and he did not contract with Mr. Eanes's bank. In other words, Judge Fox is drawing a parallel between the auditing firm in *Swaney* and Mr. Eanes's *bank*, rather than Mr. Eanes himself. That parallel is faulty. As in *Swaney*, where the ADFA asked the auditing firm to perform audits and the auditing firm created private working papers, here Judge Fox asked Mr. Eanes to purchase documents and Mr. Eanes created the check used to purchase those documents. Just as the State agency was required to disclose the auditor's working papers regardless of where they might have been stored,[3] the fact that Mr. Eanes's check is stored at his bank makes it no less accessible to him and, therefore, to Judge Fox. In fact, the FOIA provides a three-day period for the custodian to gather records stored elsewhere. *See* Ark. Code Ann. § 25-19-105(e) (Repl. 2002).

The trial court found Judge Fox's arguments unpersuasive and made the following conclusions of law as to the question of whether Judge Fox was the custodian with administrative control over the check:

> 20. Giving due consideration to the preponderance and weight of legislative intent and the requirement of a liberal interpretation of the FOIA, this Court concludes that one who has administrative control is that public official or employee who is charged with the responsibility to manage or execute the public affairs or conduct of their office, department or agency.

---

[3] The dissent cites to *Depoyster v. Cole* , 298 Ark. 203, 766 S.W.2d 606 (1989) for the proposition that "there must be some nexus or connection between the person to whom the FOIA request is directed and the keeping of the document." However, the *Depoyster* case makes no such assertion. In *Depoyster*, an agency supported by public funds destroyed ballot slips after a vote, although the agency generally kept such ballot slips. We held that the agency's actions were a violation of the FOIA because the ballot slips were public records that should have been retained. That the agency was also the entity that *kept* the public records was not at issue. On the other hand, in *Swaney v. Tilford, supra*, the entity that kept the public records *was* at issue. There, the trial court found that, because the agency in question did not keep the public records itself, it was not the proper entity to which an FOIA request should be directed, and that the auditing firm that held the records was actually the custodian of the records. We reversed the trial court, holding that, regardless of who kept the records, the public agency was the proper custodian to whom the FOIA request should be directed. Clearly, under *Swaney*, there need be no "nexus" between the person to whom the FOIA request is directed and the keeping of the document.

21. In the present case, [Judge Fox] was the person charged with the administrative responsibilities of the office of the Circuit Judge, Sixth Division, for the Sixth Judicial District in Pulaski County, Arkansas.

22. Furthermore, Eanes was an employee of Pulaski County, Arkansas, and under the direct supervision of [Judge Fox].

23. Eanes either had possession or the right of possession of the cancelled check.

24. Thus, [Judge Fox] had both the power and the responsibility under the Arkansas FOIA to either provide a copy of the cancelled check to Plaintiffs, or make arrangements for reasonable access to such records.

■ ■ In light of our previous opinions and our liberal construction in favor of disclosure, we cannot say the trial court's interpretation of the term "administrative control" is in error. As Judge Fox is the public official charged with the responsibility of managing the affairs and conduct of his office, we hold that the trial court correctly ruled that Judge Fox was the custodian of Mr. Eanes's check with both the power and responsibility under the FOIA to either provide a copy of the canceled check to Mr. James or to make arrangements for reasonable access to the check.

In sum, we affirm the trial court's conclusion that the check drawn on Mr. Eanes's personal checking account was a "public record" as defined by Ark. Code Ann. § 25-19-101 *et seq.* We further affirm the trial court's ruling that Judge Fox, having administrative control over Mr. Eanes's check, pursuant to the provisions of the FOIA, had the responsibility to provide either a copy of the check or reasonable access to it.

Affirmed.

DICKEY, C.J., and GLAZE and CORBIN, JJ., dissent.

TOM GLAZE, Justice, dissenting. In declaring a personal check drawn on a private bank account a "public record," the majority opinion has created a very dangerous precedent. Therefore, I dissent from that holding. This court unquestionably must give a liberal construction of the Freedom of Information Act, Ark. Code Ann. § 25-19-101 *et seq.* (Repl. 2002 & Supp. 2003), to accomplish its

"broad and laudable purpose that public business be performed in an open and public manner." *See Arkansas Dep't of Health v. Westark Christian Action Council*, 322 Ark. 440, 910 S.W.2d 199 (1995). However, with all due respect to the majority, this court stretches the FOIA well beyond its terms when it holds a personal check to be a "public record."

Although the majority succinctly states the facts of this case, it fails to discuss or describe the testimony offered at the hearing on appellee Sam Perroni's FOIA request. At that hearing, Perroni's law partner, Patrick James, made a number of telling comments. For instance, James stated that he and Perroni pursued the FOIA complaint because they "were not satisfied with the documents and [Judge Fox's] general response to [them] and response to [their] FOI request." Specifically, James said, he and Perroni "wanted documentation concerning the source of funds. . . . [I]f there were records from the Pulaski County Government, I would expect there to be some type of record."

Without citing authority, James repeatedly asserted that it was his "belief" and "position" that the personal check of Judge Fox's law clerk, David Eanes, constituted a public record. However, he conceded that it was accurate to say that the FOIA did not require a public official to create a document that does not exist. He further stated that he was "after the source of funds and any checks. . . . I didn't know if it was a check from the county. I didn't know if there were vouchers there. I didn't know if there were personal checks at the time. I did believe and I still believe . . . that there are public records which would evidence these transactions which occurred." James agreed, though, that after having the county attorney search her records, there were "no vouchers in process" with respect to any reimbursement request from Judge Fox.

Judge Fox testified that there were "no documents which would reflect the source of the funds expended on these documents," because "none exist." Judge Fox stated that he gave Eanes $20 in cash and asked him to go to the federal court and get whatever documents there were. When Eanes came back with the receipts, showing that it had cost $55.20 to get the records, Judge Fox gave him another $35.20 in cash and coin. This money, the judge stated, was "technically . . . not Pulaski County's money [because Fox had] not yet submitted a reimbursement voucher for it." He also pointed out that he had another $35 reimbursement that he had not yet submitted, and that he did not fill out the

reimbursement voucher because he had not had time. He denied having any purpose to try to conceal the expenditure, stating that he intended "at some point [to] submit a reimbursement voucher to the County." Judge Fox stated that he did not bring any documents to the hearing in response to the subpoena *duces tecum* because "none exist other than what I have already provided." On cross-examination, Judge Fox stated that it was his view that "the source of funds as of today and as of the date [of] the FOI request, was my wallet." The judge further stated that he did not believe that he had the right to direct his law clerk to turn over any cancelled checks that had been written on Eanes's personal bank account.

For his part, Eanes testified that he believed that Judge Fox purchased the documents from the federal court file. He said, "Out of expediency, I wrote a check, but I was immediately reimbursed for it in cash." On cross-examination, he reiterated that the "source of funds . . . for those purchases was the Judge's payment. Cash. I didn't keep a photocopy of the cash and coin that Judge Fox gave me. The only thing I had was a receipt, and I turned that over to him."

The question here is whether, under Ark. Code Ann. § 25-19-105(a) (Repl. 2002),[1] Eanes's cancelled check is a "writing" that is "required by law to be kept or otherwise kept," which "constitute[s] a record of the performance . . . of official functions which are or should be carried out by a public official or employee[.]" In interpreting the FOIA, this court has remarked on the need for a balancing of interests to give effect to the intent of the General Assembly, stating that we do so with *a common sense approach. Sebastian County Chap., Am. Red Cross v. Weatherford*, 311 Ark. 656, 846 S.W.2d 641 (1993) (emphasis added); *see also Bryant v. Mars*, 309 Ark. 480, 830 S.W.2d 869 (1992). Here, obviously, Eanes's check is a "writing," but equally obviously, his check is *not*

---

[1] Section 25-19-105(a) reads as follows:

"Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium, *required by law to be kept* or otherwise kept, and *which constitute a record of the performance or lack of performance of official functions which are or should be carried out by a public official or employee*, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. *All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.*

(Emphasis added.)

"required by law to be kept," because it is a personal check, drawn on Eanes's personal bank account. These facts are not disputed.

Thus, the issue is reduced to whether Eanes's cancelled check was something "otherwise kept and which constitute[s] a record of the performance . . . of official functions which are or should be carried out by a public official or employee[.]" In his brief, Judge Fox noted that the FOIA requests were directed at him, and he did not "keep" Eanes's cancelled check. Fox further averred that he never "possessed, saw, or even asked to see" the check. Instead, Eanes's bank "kept" the check. Additionally, the bank is not holding Eanes's check for Judge Fox, nor is it keeping the check as a record of the "performance of official functions which are . . . carried out by a public . . . employee." The bank is simply keeping Eanes's check as part of its normal business operations. The statute requires that the writing be something that is "otherwise kept *and* which constitutes a record." This phrase is in the conjunctive. While the bank may well "otherwise keep" the check, it is not keeping it because it constitutes a record of acts by a public employee. Therefore, David Eanes's personal check does not fit the definition of a "public record."

Also supporting the conclusion that the personal check was not "otherwise kept," in the sense intended by the statute, is a comment made by this court in *Depoyster v. Cole*, 298 Ark. 203, 766 S.W.2d 606 (1989). There, Depoyster sought the voting records of the Arkansas Athletic Association ("AAA"); Depoyster, the superintendent of the Newark School District, was trying to find out how the AAA had voted on the site selections for high school basketball tournaments. In this case, the AAA had taken a vote by using unsigned written ballots that were discarded after the vote. Depoyster filed a FOIA complaint, asking the trial court to declare that the AAA's practices violated the Act. The trial court declined to do so, but this court reversed on appeal. After examining the purpose of the FOIA, this court noted that the Act declares that "all writings or data compilations in any form required by law to be kept or otherwise kept" are "public records." This court concluded "[t]he vote slips at issue, being *records generally or otherwise kept by the AAA*, therefore constituted public records which should have been retained." *Depoyster*, 298 Ark. at 207 (emphasis added).

The *Depoyster* court focused on the fact that the records had been retained by the AAA, which was the party to whom the FOIA request had been directed. The majority attempts to contrast

*Depoyster* with *Swaney v. Tilford*, 320 Ark. 652, 898 S.W.2d 462 (1995), by suggesting that *Swaney* holds that there need be no nexus between the person to whom the FOIA request is directed and the keeper of the document. However, in *Swaney*, there was never a question regarding whether the documents at issue were public records, as there is here. The *Swaney* court stated that "the *only issue* is who is to be responsible for *obtaining production* of the records from [the private accounting firm], the public agency (ADFA), or the private individual seeking disclosure of the records." *Swaney*, 320 Ark. at 654 (emphasis added). Thus, the court in *Swaney* was not called upon to interpret the phrase "otherwise kept" and utilize that interpretation to decide if the documents were public records, as we must do here.

Here, *Judge Fox* was the person to whom the FOIA request was directed; obviously, he is neither required by law to keep, nor does *Judge Fox* "otherwise keep" Eanes's cancelled checks. For the phrase "otherwise kept" to have any meaning within the context and purpose of the FOIA,[2] it cannot be read as broadly as the majority suggests. Instead, under *Depoyster,* it is clear that there must be some nexus or connection between the person to whom the FOIA request is directed and the keeping of the document. Were it to be otherwise, any document, in any place, "kept" for any reason — or for no reason at all — could be subject to the FOIA . . . and subject to abuse.

Further, Judge Fox argued that the "presumption" that the check is a public record does not apply. This references the portion of § 25-19-103(5)(A) that states that "[a]ll records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records." Eanes testified that the check in question was not written off of a business account, but instead is his and his wife's personal joint account. Common sense makes it clear that a personal check is not a "record maintained . . . by a public employee[ ] within the scope of [his] employment."

Interestingly, Perroni and James argue that, "[b]ut for the check created and conveyed to the federal court clerk, [Judge

---

[2] It is the purpose of the Freedom of Information Act to ensure "that the public business be performed in an open and public manner so that the electors shall be advised of the performance of public officials and of the decisions that are reached in public activity and in making public policy. . . ." Ark. Code Ann. § 25-19-102 (Repl. 2002).

Fox's] law clerk would not have received the certified documents[.] . . . Accordingly, documents . . . which reflect the source of funds for that purchase' plainly fall within the definition of 'public records'[.]'' This contention makes no sense. Consider, for example, what would have happened if Eanes had had enough cash in his pocket to cover the extra $35.20, *and did not have to write a check*. Would Perroni then demand a photocopy of that cash? It appears that what happened here is that Perroni and James learned Judge Fox had not yet made a request for reimbursement with the county, and they misdirected their attention to something they thought they could physically lay their hands on — the check. However, the check is not a "public record," and the trial court misconstrued the FOIA in concluding that it was.

DICKEY, C.J., and CORBIN, J., join this dissent.