## CITY of LITTLE ROCK; Pulaski County Sheriff's Office *v.* Willie CARPENTER

08-171                                           288 S.W.3d 647

### Supreme Court of Arkansas
### Opinion delivered October 30, 2008

*Thomas M. Carpenter*, Little Rock City Attorney, for appellant.

*Owings Law Firm*, by: *Steven A. Owings* and *Tammy B. Gattis*, for appellee.

PAUL E. DANIELSON, Justice. Appellant City of Little Rock[1] appeals from the order of the Pulaski County Circuit Court granting attorney's fees to appellee Willie Carpenter. We hold that the order of the circuit court was inconsistent with an award of attorney's fees and costs and, therefore, we reverse and remand.

The record reveals the following material facts. On August 6, 2005, Little Rock police officers stopped a vehicle in which Mr. Willie Earl Leggs, Jr., was a passenger. As a result of the stop, Leggs

---

[1] While the Pulaski County Sheriff's Office was a party below, it is not a party to the instant appeal.

was arrested for being a felon in possession of a firearm. While Leggs was incarcerated at the Northside Holding Facility of the Pulaski County Regional Detention Facility, he suffered some kind of seizure and was transported to Baptist Health Medical Center – North Little Rock. Leggs was later pronounced dead, and his autopsy report ruled the death as accidental, finding the cause of death to be from cocaine intoxication.

On September 26, 2005, Ms. Tammy B. Gattis, counsel for Ms. Willie Carpenter, Leggs's mother and the appellee in this appeal, hand delivered a request for documents, pursuant to Arkansas's Freedom of Information Act (FOIA), to the Little Rock City Attorney's office and the Little Rock Chief of Police. The request read as follows:

> All documents related in any way to any investigation/review conducted by any person or entity into the circumstances surrounding the incarceration or demise of Willie Earl Leggs, Jr., while in the Pulaski County Jail or in the custody of the Little Rock Police on or about August 6, 2005.

Melinda S. Raley, the Deputy City Attorney, responded to Ms. Gattis on September 28, 2005, by a letter sent both via facsimile and regular mail. That letter confirmed that the Little Rock Police Department (LRPD) had opened an Internal Affairs investigation as to Mr. Leggs's death and that the files were still in active use. The letter also informed Ms. Gattis that Ms. Raley would discuss the FOIA request with the City Attorney, Thomas M. Carpenter, as soon as he returned to the office the following day.

On September 29, 2005, Ms. Gattis made a more specific FOIA request to Ms. Raley, which sought: (1) a copy of the LRPD general order number 311 (policy and procedure of Internal Affairs); (2) a copy of the LRPD policy and procedure 303 (policy concerning use of force); (3) the name of the "supervisor and officer who worked with North Little Rock holding cell the date of August 6, 2005 — including arrival and departure time of the officers;" (4) a copy of the "[p]olicy and procedure within LRPD when an inmate dies while in jail;" and (5) a copy of the "[p]olicy and procedure used to determine whether or not an Internal Affairs investigation will be conducted within [LRPD]." Shortly after this request was made, the Chief Deputy City Attorney, William C. Mann, III, responded to Ms. Gattis and outlined how

her request was impacted by an ongoing Internal Affairs investigation in terms of the City of Little Rock's ability to disclose certain documents. Mann copied the e-mail to LRPD Sergeant Terry Hastings[2] and instructed him to immediately provide Ms. Gattis with the records to which she was unquestionably entitled. Later the same day, Ms. Gattis e-mailed Mann with a new FOIA request for access to any audio and video tapes of the stop and arrest of Mr. Leggs. Mann responded and informed her that the records of an Internal Affairs investigation are not disclosed pursuant to the FOIA unless the subject of the investigation is suspended or terminated as a result of the investigation. Additionally, Mann informed her that the North Little Rock Police Department (NLRPD) might have conducted a criminal investigation into Mr. Leggs's death and, if so, she would be entitled to a copy of any tapes in the possession of the NLRPD once the investigation was completed. However, Mann did provide Ms. Gattis some of the documents generated from her previous requests — General Order 211[3] and General Order 303, involving the policy on use of force.

Ms. Gattis submitted a new FOIA request on October 6, 2005, for any written agreement between the City of Little Rock (hereinafter "the City") and Pulaski County regarding staffing at the North Little Rock facility when a Little Rock prisoner is present. On October 10, 2005, Mann responded, informing Ms. Gattis that he could not determine the existence of any agreement between the City and Pulaski County on the operation of the North Little Rock facility, but that he would continue to follow up. He also indicated that he did not know the precise date the Internal Affairs investigation began, but offered that the information would be provided to him the next day. Finally, Mann revealed that the staffing records for the LRPD showed that officers Ian Ward and John Brawley were on duty from 9:45 p.m. until 5:45 a.m. on August 4-5, 2005, and were replaced by officer Martin Gorbet on August 5, 2005 at 6:45 a.m. until 2:45 p.m. The following day, October 11, 2005, Mann informed Ms. Gattis that there was no written agreement with Pulaski County regarding the operation of the North Little Rock facility.

---

[2] Terry Hastings has since become Lieutenant; however, at the time, he was a sergeant.

[3] Ms. Gattis had mistakenly asked for General Order 311; however, Mann informed her that it was 211 that involved the Internal Affairs Division.

Ms. Gattis made another FOIA request on October 28, 2005, asking for a copy of Ms. Carpenter's statement to the Internal Affairs Department. Additionally, on November 11, 2005, she hand delivered a letter to Mann that included a new FOIA request and a repeat request for disclosure of some documents that had already been provided. Mann responded on November 14, 2005, and informed Ms. Gattis that a request had been made by the LRPD Chief of Police to the Arkansas Attorney General for an opinion concerning the disclosure of records contained in an ongoing Internal Affairs investigation.

On November 16, 2005, Mann supplied Ms. Gattis with public records from the LRPD criminal investigation files for Tory Edwards and Antonio Smith.[4] The same day, the Attorney General issued an opinion in response to the request made by the LRPD Chief of Police. The opinion noted that if records had been properly categorized as "employee evaluations or job performance records," the decision to withhold them from disclosure is consistent with the FOIA. *See* Op. Ark. Att'y Gen. No. 267 (2005). In addition, it stated that suspension or termination of the employee is the threshold requirement for release of employee evaluation or job performance records and provided the parameters for the custodian to follow in properly classifying records in order to make a determination as to which records are subject to release. *See id.*

On November 18, 2005, Mann sent a letter to Ms. Gattis explaining that, given the parameters set out in the Attorney General's opinion, he had reviewed everything in the Internal Affairs file and had determined that fifty-four documents out of the file would be available for disclosure under the FOIA. He additionally explained what documents were not released and the City's reasoning behind withholding them. Finally, he informed her that the North Little Rock criminal investigative file would be available because the investigation had been concluded. On November 23, 2005, Mann also supplied Ms. Gattis with a VHS tape of Leggs's arrest made from the original two MVR tapes.

On the afternoon of December 5, 2005, Mann sent an e-mail to Stuart Thomas and David Ebinger, inquiring whether certain audio tapes of communications from the day of Leggs's arrest existed and, if so, if they were Internal Affairs records. That

---

[4] Tory Edwards and Antonio Smith were both housed in the cell with Leggs on August 6, 2005, before his death.

information was necessary to determine if they were subject to disclosure. Thomas replied that he would have to defer to Ebinger because he did not know. The next day, December 6, 2005, Mann informed Thomas via e-mail that Ebinger had advised him that any audio would have been generated as a result of the Internal Affairs investigation and, therefore, he would not provide copies to Ms. Gattis.

Also on December 6, 2005, Ms. Carpenter filed a lawsuit with the Pulaski County Circuit Court, pursuant to Arkansas's FOIA, codified at Ark. Code Ann. § 25-19-101 et seq. (Supp. 2005). The complaint alleged that the City and the LRPD had knowingly violated the FOIA and failed to timely respond to the FOIA requests. On December 10, 2005, in preparing for the hearing in the lawsuit, Mann sent Ms. Gattis the e-mails from December 5 and 6 between he, Thomas, and Ebinger, which created a two-page document when printed. Mann informed Ms. Gattis that the e-mails would be subject to disclosure as they were not generated by the Internal Affairs investigation.

The circuit court held the hearing on the FOIA matter on January 4, 2006, during which the LRPD was dismissed as a defendant, and Ms. Gattis was asked to specify what public records were being requested. The circuit court found that anything in the Internal Affairs file would be reviewed in camera to determine if they were subject to disclosure and that a few of the requests could not be answered because there was nothing in existence to produce. On January 23, 2006, the circuit court issued its order to review in camera all records maintained in the Internal Affairs file. After conducting its review, the circuit court found that "the City did not have to disclose any other public records pursuant to FOIA."

Ms. Carpenter moved for attorney's fees in this case on May 11, 2007. The circuit court issued its final order on October 15, 2007, and found:

> 9. The Court, after an in camera inspection, did not require the City to disclose the contents of the [Internal Affairs] file to Ms. Gattis or to Mr. Owens.
>
> 10. Throughout the changing sets of requests for public records pursuant to the Arkansas Freedom of Information Act, the City

responded promptly, provided public records as quickly as possible. However, there were certain documents provided after the filing of the lawsuit.[5]

11. The plaintiff is awarded the cost of filing the lawsuit along with the costs of service of the lawsuit. The plaintiff is also awarded attorneys fees of $1,000.00. This fee is a fraction of the fee requested based on the Court's view that the plaintiff prevailed only sections [sic] of her complaint.

The City timely filed its notice of appeal and alleges on appeal that the circuit court erroneously granted attorney's fees.

The City asserts that because Ms. Carpenter did not substantially prevail in the FOIA litigation and because it was unjust under the circumstances, the circuit court erred in awarding fees and costs to the appellee. Ms. Carpenter responds that the conduct of the City violated "the express intents and purposes of the Freedom of Information Act" and, while the City attempted to "gloss over its tactics of obstruction, delay and neglect," there was no reasonable justification for withholding documents. Therefore, Ms. Carpenter argues the circuit court's order should be upheld.

We have previously held that attorney's fees are not allowed except where expressly provided for by statute. *See Harris v. City of Fort Smith*, 366 Ark. 277, 234 S.W.3d 875 (2006). An award of attorney's fees will not be set aside absent an abuse of discretion by the circuit court. *See id.*

In the instant case, we are called to interpret the statutory provision of the FOIA regarding attorney's fees. Our standard of review for issues of statutory construction is well settled:

We review issues of statutory construction de novo. We are not bound by the trial court's decision; however, in the absence of a showing that the trial court erred, its interpretation will be accepted as correct on appeal. When reviewing issues of statutory interpretation, we keep in mind that the first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. When the language of a statute is plain and unambigu-

---

[5] In the circuit court's findings of fact, the only document found to be produced after the filing of the lawsuit was the document produced by Mann on December 10, 2005.

ous, there is no need to resort to rules of statutory construction. A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. When a statute is clear, however, it is given its plain meaning, and this court will not search for legislative intent; rather, that intent must be gathered from the plain meaning of the language used.

*Harris*, 366 Ark. at 280, 234 S.W.3d at 878 (internal citations omitted).

Arkansas's FOIA allows for an award of attorney's fees under Ark. Code Ann. § 25-19-107(d), which provides in pertinent part:

(d) In any action to enforce the rights granted by this chapter, or in any appeal therefrom, the court shall assess against the defendant reasonable attorney's fees and other litigation expenses reasonably incurred by a plaintiff who has substantially prevailed unless the court finds that the position of the defendant was substantially justified or that other circumstances make an award of these expenses unjust. However, no expenses shall be assessed against the State of Arkansas or any of its agencies or departments. If the defendant has substantially prevailed in the action, the court may assess expenses against the plaintiff only upon a finding that the action was initiated primarily for frivolous or dilatory purposes.

We give a liberal construction to the FOIA to accomplish its "broad and laudable purpose that public business be performed in an open and public manner." *Fox v. Perroni*, 358 Ark. 251, 256, 188 S.W.3d 881, 885 (2004).

The plain language of the statute here is clear and controlling. Under the plain language of the statute, attorney's fees shall be assessed against the defendant when the plaintiff substantially prevailed in his suit to enforce a right granted under the FOIA, unless the position of the defendant was substantially justified or other circumstances make an award of attorney's fees or costs unjust. *See Harris, supra.*

We must now determine if attorney's fees were warranted in the present case, first considering if Ms. Carpenter substantially prevailed in the FOIA lawsuit below. Our review of the record reveals that she did not even partially prevail on the FOIA claim. After asking Ms. Carpenter to specify what documents were being

requested under the FOIA at the January 4, 2006 hearing, and after reviewing the Internal Affairs file, the circuit court found that the City did not have to disclose any other public records pursuant to the FOIA. The circuit court's order also specifically found that "throughout the changing sets of requests for public records pursuant to the Arkansas Freedom of Information Act, the City responded promptly, [and] provided public records as quickly as possible."

The circuit court did state in its order that it was awarding a fraction of the fees requested by Ms. Carpenter because of its opinion that she "prevailed only sections of her complaint [sic]." However, after reviewing the record and the specific findings made by the circuit court, this court fails to find on what claims Ms. Carpenter prevailed, much less, how she "substantially prevailed," as required by the statute. While the circuit court included in its order that certain documents were provided after the filing of the lawsuit, its findings of fact provide only that "[o]n December 10, 2005, Mann provided an additional document to the plaintiff." The record includes the letter and document provided by Mann to Ms. Gattis on that date, which was a printed set of internal e-mails discussing why certain audio tapes would not be provided to Ms. Gattis. Those e-mails were not generated until hours before the complaint was filed and, therefore, were certainly not the basis for the FOIA lawsuit.[6]

Because Ms. Carpenter did not substantially prevail in the FOIA action, the circuit court abused its discretion in awarding her fees and costs. Therefore, we reverse and remand this matter to the circuit court for entry of an order consistent with this opinion.

Reversed and remanded.

WILLS, J., not participating.

---

[6] In her brief, Ms. Carpenter argues that "on December 19, 2005, the remaining documents requested under the FOIA were delivered to appellee's attorney's office, including documents that the City of Little Rock previously claimed were not subject to disclosure under the FOIA law." However, she does not cite this court to any document in the record or to any finding by the circuit court that supports this claim. Furthermore, the circuit court's order found that the City responded promptly to the FOIA requests and provided the public records as quickly as possible. Ms. Carpenter did not appeal that finding and may not now present an argument contrary to that finding.